**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **FRANCISCA BALOGUN and** | § | |
| **OLUSEGUN BALOGUN,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:15-CV-3651-N** |
| | § | |
| **JP MORGAN CHASE,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant's Motion to Dismiss*, filed November 20, 2015 (doc. 5), and *Plaintiffs Motion to Return Case to Dallas County*, filed January 4, 2016 (doc. 10). Based on the relevant filings and applicable law, the motion to remand should be **DENIED**, and the motion to dismiss should be **GRANTED**.

## I. BACKGROUND

This case involves the foreclosure of property located at 7525 Holly Hill Drive, Unit 67, Dallas, Texas 75231 (the Property), which secured a home equity loan that was a part of a bankruptcy action. (doc. 1-1 at 6; doc. 6 at 1.)[1] On October 22, 2015, Francisca Balogun (Francisca) and Olusegun (Olusegun) Balogun (collectively, Plaintiffs) filed this *pro se* suit against JP Morgan Chase, N.A.[2] (Defendant) in state court. (*See* doc. 1-1 at 6-7.)

On June 15, 2004, Olusegun took out a home equity loan with Bank One, N.A. for the original principal amount of $38,400.00, pursuant to a promissory note. (doc. 6-3 at 11-13.) Both

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]Defendant states that it was incorrectly sued as "JP Morgan Chase." (doc. 6 at 1.)

he and Francisca executed a homestead lien contract and deed of trust (Home Equity Deed of Trust), which secured payment of the note. (*Id*. at 14-20.) On July 16, 2004, Bank One, N.A. merged with Defendant and assumed all of its debts, liabilities, obligations, and duties. (doc. 6-3 at 21-28.)

In 2008, Olusegun filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States District Court for the Northern District of Texas (the Bankruptcy Case). (*See* doc. 1-1 at 8-9; doc. 6-5 at 1.) He signed a Reaffirmation Agreement that was filed with the bankruptcy court on April 7, 2009, in which he reaffirmed his debt to Defendant, as successor in interest to Bank One, N.A., in the amount of $30,129.20. (doc. 6-5 at 1-9.) The bankruptcy court entered a Discharge of Debtor under Section 727 of Title 11 of the United States Code on May 28, 2009. (doc. 1-1 at 8.)

**A. <u>Prior Lawsuit</u>**

Olusegun filed suit on May 7, 2013, in the United States District for the Northern District of Texas (the Prior Lawsuit)[3] "grieving for the Defendant, J.P. Morgan Chase" for inflicting emotional distress on his family due to false credit reporting and "illegally placing lien and foreclosure" on his Property. (doc. 6-1 at 1; Prior Lawsuit, doc. 3.) The caption identified Jamie Dimon, Defendant's purported Chief Executive Officer, as the defendant. (*Id*.) Mr. Dimon filed a motion to dismiss the original complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Prior Lawsuit, docs. 6-7.) Olusegun's claims were dismissed on March 18, 2013, and he was granted leave to amend his complaint. (doc. 6-1 at 1; Prior Lawsuit, doc. 10.) He filed an amended complaint on May 7, 2013, against Chase Home Finance, LLC, in which he "grieve[d] for the [Defendant's] ability to hold him ransom[] on a loan that was included in [his]

[3] *Balogun v. Chase Home Finance*, No. 3:12-cv-5278-P (N.D.Tex.).

bankruptcy of 2008." (*Id*. at 1; Prior Lawsuit, doc. 13 at 1.) He demanded "all payments afterwards" plus court costs. (*Id*.) Defendant, as successor in interest to Chase Home Finance, LLC, moved to dismiss the amended complaint. (Prior Lawsuit, docs. 15-16.) The order granting the motion to dismiss construed Olusegun's *pro se* complaint as appearing to request "a legal remedy stemming from actions arising out of a 2008 bankruptcy proceeding." (doc. 6-1 at 2; Prior Lawsuit, doc. 18 at 2.) It found that "[o]n the face of the pleadings, it is unclear what legal harm occurred and how it would trigger a viable lawsuit." (*Id*.) It also specifically noted that Olusegun had signed the Reaffirmation Agreement with Defendant in the Bankruptcy Case. (*Id*.) The claims were dismissed with prejudice on June 4, 2013. (doc. 6-2 at 1; Prior Lawsuit, doc. 19.)

**B. <u>Expedited Foreclosure Proceeding</u>**

On September 2, 2014, Defendant filed an Application for Expedited Order Allowing Foreclosure Under Tex.R.Civ.P. 736 against Plaintiffs (the Rule 736 Foreclosure Application) in state court. (*See* doc. 6-3.) An order granting the Application was entered on December 5, 2014, giving Defendant the right to proceed with foreclosure of the Property under the Home Equity Deed of Trust and Tex. Prop. Code § 51.002. (*Id*. at 86-88.) The Property was sold on October 6, 2015, to Dan Willems, and a Substitute Trustee's Deed regarding the sale was recorded on October 22, 2015. (*See* doc. 6-4 at 1-2.)

**C. <u>Current Lawsuit</u>**

Plaintiff's state court petition alleges that they are the sole proprietors of the Property. (doc. 1-1 at 6.) They contend they have no mortgage because they purchased the Property in cash from Henry Miller Realty in 1995. (*Id*.) They claim that a home equity loan from Defendant taken out in 2004 was discharged in bankruptcy pursuant to an earnest money contract. (*Id*.) Plaintiffs seek

to interplead the sum of $250,000.00 into the registry of the Court for a determination of the party "rightly entitled to the same harassment, emotional distress and disruption the defendant caused the plaintiff's family with small children." (*Id*. at 7.) They contend that they are subrogated to Defendant's interest under the Home Equity Deed of Trust, and they seek a declaration of rights, status, and legal relations under the Deed of Trust. (*Id*.) They also seek "temporary and permanent injunctions prohibiting [Defendant] from foreclosing, conducting a sale pursuant to the process of foreclosing or under the power of sale in the ... loan documents, or in any way attempting to affect the title or possession of plaintiffs['] real property.")[4] (*Id*.) The petition can also be liberally construed as asserting a cause of action for trespass. (*See* doc. 1-4 at 15.)

On November 12, 2015, Defendant removed the action to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 1-3.) On November 20, 2015, Defendant moved to dismiss Plaintiffs' petition for failure to state a claim. (doc. 5.) In response, Plaintiffs moved to remand the case to state court on January 4, 2016. (doc. 10.)

## II. MOTION TO REMAND

Plaintiffs argue in their document entitled "Proper Jurisdiction" and "Plaintiffs['] Motion to Return Case to Dallas County" that the case is a State matter and therefore the State should deal with it. (doc. 10 at 1.) They appear to move for remand of the case to state court on the basis of lack of subject matter jurisdiction.[5]

---

[4]Attached to Plaintiffs' petition is a copy of a handwritten letter from the buyer of the Property at the foreclosure sale requesting that Olusegun call him to arrange possession of the Property. (doc. 1-1 at 15.) At the bottom of the letter, the sentence "[t]his is trespassing pure & simple!" is handwritten in large letters. (*Id*.)

[5]Plaintiffs have not alleged a procedural defect in the removal. Even assuming they have, they waived their right to allege a procedural defect by failing to raise it within 30 days from the date of the removal. *See Nationstar Mortgage LLC v. Baker*, No. 4:15-cv-455, 2015 WL 5908534, at *1 (E.D.Tex. Sept. 18, 2015)(citing *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 566 (5th Cir. 1995)).

Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. Diversity jurisdiction exists in all civil actions where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship between the parties. *Id.* § 1332(a).

To determine whether it has federal jurisdiction over the removed case, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* "[A]ny doubt about the propriety of removal, must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

"[W]hen a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts." *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992) (citation omitted); *see also Smith v. Estate of Wagner*, No. CIV A H 06-02629, 2006 WL 2729282, at *3 (S.D. Tex. Sept. 25, 2006) (explaining that a "court ... [may] consider the defendant's notice of removal, other pleadings, and the record as of the time of removal if necessary to shed light on the plaintiff's pleadings"). "The purpose of this careful survey, however, is to shed light on the plaintiff's pleadings. The court's focus is on the plaintiff's pleadings, not the defendant's." *Aquafaith*, 963 F.2d at 808.

Because no federal question is presented in this case, removal was proper only if Defendant met its burden of showing that the amount in controversy exceeds $75,000.00, and that there is diversity of citizenship between the parties. *See Carillo v. JP Morgan Chase Bank, N.A.*, No. EP-12-cv-222-KC, 2012 WL 3276971, at *3 (W.D.Tex. Aug. 9, 2012).

**A. Amount-in-Controversy**

The amount-in-controversy threshold is a necessary element that must be met before a federal court can properly exercise diversity jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). In a motion to remand, the amount in controversy is determined from the plaintiff's perspective. *Burr v. JP Morgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012). The defendant, as the removing party, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). The defendant may satisfy this burden by demonstrating that it is facially apparent from the plaintiff's petition that the claim likely exceeds $75,000.00, or by setting forth the facts in controversy that support a finding of the requisite amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

Defendant argues that the amount in controversy meets and exceeds the federal jurisdictional minimum of $75,000.00, exclusive of interest and costs, because Plaintiffs seek a determination of the party entitled to $250,000.00. (doc. 12 at 2.) "Courts [] consider the nature of the claims and the types of damages sought to determine whether it is facially apparent that the amount in controversy meets [the] jurisdictional requirements." *Hannah v. Allstate Texas Lloyd's*, No. EP-11-CV-269-KC, 2011 WL 5325257, at *2 (W.D. Tex. Nov. 2, 2011) (internal quotations omitted). On their Civil Case Information Sheet, Plaintiffs indicated that the damages sought are "[o]ver $200,000 but not more that $1,000,000." (doc. 1-1 at 18.) Also, in the section of their petition entitled

"Interpleader", they state that they interplead the sum of $250,000.00 into the custody of the Court "for a determination of the party rightfully entitled to the same harassment, emotional distress and disruption the defendant caused the plaintiff's family with small children." (doc. 1-1 at 7.) In their prayer for relief, they also request that the Court determine the disposition of the stakeholder funds tendered into the registry of the Court. (*Id*.) It therefore appears that they seek $250,000.00 in damages for alleged harassment, emotional distress, and disruption. Defendant has demonstrated that it is facially apparent from Plaintiffs' petition that their claim likely exceeds $75,000.00.

**B. <u>Diversity of Citizenship</u>**

An action removable based on diversity jurisdiction may not be removed if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A case that is removed under § 1332 must have "complete diversity" of citizenship. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005); *see also* 28 U.S.C. § 1332. This means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). The party asserting diversity jurisdiction must "distinctly and affirmatively" allege the citizenship of all the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988); *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) (per curiam) (citations omitted).

Individuals are citizens of the states in which they are domiciled. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). Here, it is undisputed that Plaintiffs are domiciled in Texas and are therefore citizens of Texas. (*See* docs. 1 at 2; 1-1 at 7.) Defendant asserts that it is a citizen of Ohio because its main office is located in Ohio. (doc. 1 at 3.) For diversity jurisdiction purposes, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941, 163

L.Ed.2d 797 (2006). Defendant's articles of association designates Columbus, Ohio, as the location of its main offices. *Boyle v. JP Morgan Chase Bank*, No. 4:13-cv-454, 2013 WL 6000462, at *4 (E.D.Tex. Nov. 8, 2013); *see Soin v. JP Morgan Chase Bank*, No. H-12-2766, 2012 WL 6018746, at *1 (N.D.Tex. Nov. 29, 2012); *Lewis v. JP Morgan Chase Bank, N.A.*, No. 12-cv-00747-BAJ-RLB, 2013 WL 3490817, at *3 (M.D.La. July 10, 2013). Defendant has shown that it is a citizen of Ohio, and that the parties are diverse for purposes of diversity jurisdiction.

Since the amount in controversy exceeds $75,000.00 and there is diversity of citizenship between the parties, removal was proper and the Court has subject matter jurisdiction.

## III. RULE 12(b)(6) MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' petition under Rule 12(b)(6) on grounds of "res judicata."[6] (*See* doc. 6 at 4-6.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v.*

[6]Defendant also moves to dismiss Plaintiffs' claims on grounds that they fail as a matter of law for lack of any factual allegations supporting any cause of action and that the sole claim for liability lacks any basis in fact because Plaintiffs executed and filed the Reaffirmation Agreement. (doc. 6 at 6-8.) Because Plaintiffs' claims are otherwise subject to dismissal based on the doctrine of res judicata, it is unnecessary to reach these arguments

*Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 679.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, "it is [also] clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Plaintiffs attached to their petition copies of the Discharge of Debtor in the Bankruptcy Case; the order granting the Rule 736 Foreclosure Application; a handwritten letter to Olusegun from the buyer of the Property at the foreclosure sale; and a notice to vacate and demand for possession from the buyer of the Property, dated October 16, 2015. (doc. 1-1 at 8-16.) These documents are therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Defendant attached to its motion copies of the order granting the motion to dismiss entered in the Prior Lawsuit; the Final Judgment entered in the Prior Lawsuit; the pleadings and filings associated with the Rule 736 Foreclosure Application; a Substitute Trustee's Deed dated October

13, 2015, regarding sale of the Property; and the Reaffirmation Agreement. (docs. 6-1; 6-2; 6-3; 6-4; 6-5.) These documents can be judicially noticed because they are matters of public record and their contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Because the documents attached to Defendant's motion to dismiss are subject to judicial notice, conversion of the motion to dismiss into a summary judgment motion is unnecessary.

## IV. RES JUDICATA[7]

Defendant contends that Plaintiffs' claims are barred by "res judicata" because they are reasserting the same arguments that were asserted in the Prior Lawsuit. (doc. 6 at 6.) It contends the claims in each case involve the same loan and property, and in each action Plaintiffs argue that Defendant should not be permitted to foreclose because of Olusegun's bankruptcy. (*Id*.)

Res judicata is generally "an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n. 3 (5th Cir. 1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

---

[7] Because res judicata is an absolute bar to a party's claims, this argument is considered first.

The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, No. 12-60291, 2013 WL 1975849, at *3 (5th Cir. May 14, 2013); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). "True res judicata" or "claim preclusion ... bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). This doctrine has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer*, 2013 WL 1975849, at *3. As with all affirmative defenses, the burden of proving claim preclusion "rests on the party claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. CIV.A. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

## A. Identical Parties or Privity with Identical Parties

Olusegun and Defendant were parties to the Prior Lawsuit and are parties to the current suit.[8] Because Francisca was not a party to the Prior Lawsuit, Defendant can claim preclusion as a defense only if she was in privity with Olusegun. *See Test Masters*, 428 F.3d at 571; *see also Russell*

[8] As noted, Plaintiffs amended their complaint in the Prior Lawsuit to name Chase Home Finance as the defendant. As its successor by merger, Defendant has privity with Chase Home Finance, LLC. *See Butts v. JP Morgan Chase Bank*, No. 3-11-CV-2542-M, 2011 WL 7109344, at *2 (N.D. Tex. Dec. 28, 2011), *rec. adopted*, 2012 WL 258269 (N.D. Tex. Jan. 27, 2012) (where the defendant in the second action was "the successor by merger" to the defendant in the first action, "[that] relationship [was] sufficient to establish privity") (citing Fifth Circuit cases); *see also Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429, 435 (5th Cir. 2009) (per curiam) ("[N]onparty preclusion may be justified based on a ... pre-existing 'substantive legal relationship[]' between the [party and nonparty]..." such as "preceding and succeeding owners of property.") (citing *Taylor*, 553 U.S. at 893).

*v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992)("A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant.").

Privity is in essence a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990). The Fifth Circuit "has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.*[9] Here, Francisca occupied the Property, owned the Property, and was obligated on the Home Equity Deed of Trust. (*See* doc. 1-1 at 6; doc. 6-3.) She has no other apparent interest or claim in this case besides the arguments articulated regarding the Property and home equity documents covering the Property. She is also his wife and therefore has a substantive legal relationship sufficient to satisfy privity. *See* Chapter 7 Voluntary Petition, at 30, *In re Olusegun Jason Balogun*, No. 09-31115-sgj7 (Bankr. N.D.Tex. Feb. 25, 2009); *Cuauhtil v. Chase Home Finance LLC*, 308 Fed.App'x 772, 773 (5th Cir. 2009)(noting that a fiduciary duty exists between a husband and a wife regarding community property controlled by each spouse, and this

---

[9] In *Taylor*, the Supreme Court "avoid[ed] using the term 'privity'" to "ward off confusion," but it identified six "exceptions" to "the rule against nonparty preclusion": (1) a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement; (2) preclusion may be justified based on a variety of pre-existing "substantive legal relationships" between the person to be bound and a party to the judgment, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor"; (3) a nonparty may be bound by a judgment where she was "adequately represented" by a party to the suit having the same interests as the nonparty, such as in "properly conducted class actions ... and suits brought by trustees, guardians, and other fiduciaries"; (4) preclusion is appropriate if the nonparty "assumed control" over the litigation in which the judgment was rendered; (5) "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"; and (6) a "special statutory scheme" may sometimes "expressly foreclose successive litigation by nonlitigants," such as statutes governing "bankruptcy and probate proceedings." *Taylor*, 553 U.S. at 893–96. Notably, the Court cautioned that this list was "meant only to provide a framework" for nonparty preclusion rather than "a definitive taxonomy." *Id.* at 893.

fiduciary relationship is the type of substantive legal relationship that satisfies the first res judicata requirement). Francisca's interest was adequately represented by Olusegun.

**B. <u>Court with Competent Jurisdiction</u>**

With respect to the second element, Olusegun filed the Prior Lawsuit in the United States District Court for the Northern District of Texas. (*See* doc. 6-1 at 1; Prior Lawsuit, doc. 3.) Neither party disputes that it was a court of competent jurisdiction to determine the Prior Lawsuit. Because the Court had jurisdiction over this case, this element is also satisfied.

**C. <u>Prior Final Judgment</u>**

The Court in the Prior Lawsuit granted Defendant's motion to dismiss and dismissed all claims with prejudice. (doc. 6-1 at 1-3.) A Rule 12(b)(6) dismissal with prejudice is a final judgment on the merits for res judicata purposes. *See Stevens v. Bank of America, N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014)("Generally a federal court's dismissal with prejudice is a final judgment on the merits for res judicata purposes ... [i]t is well established that Rule 12(b)(6) dismissals are made on the merits."). The third element is also met here.

**D. <u>Same Claims</u>**

Defendant contends that the claims asserted in the current lawsuit arise out of the same nucleus of operative facts as the Prior Lawsuit. (doc. 6 at 5.) It claims that Plaintiffs are reasserting the same arguments in this lawsuit as in the Prior Lawsuit because the claims in each case involve the same loan and Property, and Plaintiffs argue in both cases that Defendant should not be permitted to foreclose because of their bankruptcy. (*Id*. at 6.)

"To determine whether two suits involve the same claim or cause of action, [the Fifth Circuit] has adopted the transactional test of the Restatement (Second) of Judgments, § 24." *Petro-*

*Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). Under this test, the "inquiry focuses on whether the two cases under consideration are based on 'the same nucleus of operative facts.'" *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (citations omitted). "[I]t is the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, that defines the claim." *Id.* Identifying the nucleus of operative facts involves a "pragmatic" approach, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Test Masters*, 428 F.3d at 571 (citing Restatement (Second) of Judgments, § 24). Ultimately, the "preclusive effect of [the] prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Petro-Hunt*, 365 F.3d at 395–96 (citation omitted).

In the first action, Plaintiff Olusegun "grieve[d]" Defendant's ability to hold him ransom on a loan that was included in the Bankruptcy Case. (Prior Lawsuit, doc. 13 at 1.) He "demand[ed]" the Defendant for "all payments afterwards plus court cost[s]." (*Id.*) He had apparently been receiving correspondence from Defendant regarding the loan, including notices that the foreclosure may be impending. (*See id.*, doc. 3.) Plaintiffs now assert that Defendant obtained an order of nonjudicial foreclosure under Rule 736 pertaining to the loan, which was discharged in the Bankruptcy Case. (doc. 1-1 at 6.) They claim that they are subrogated to Defendant's interest under the home equity lien contract, and they seek a declaration of their rights, status and legal relations as well as injunctive relief to prohibit Defendant from foreclosing or from attempting to affect their title to or possession of the Property. (*Id.*)

Plaintiffs' claims in both actions arise from the same transactions, or series of connected

transactions: Olusegun obtained a home equity loan from Defendant's predecessor, Plaintiffs executed the Home Equity Deed of Trust, the home equity loan was listed in Olusegun's bankruptcy case, he signed a Reaffirmation Agreement, and Olusegun was discharged in bankruptcy. (*See* doc. 1-1 at 6-7; doc. 6-3 at 12-20; doc. 6-5 at 1-9.) All of the allegations in both lawsuits relate to Defendant's attempt to pursue its rights under the loan. They revolve around Plaintiffs' belief that Defendant had no right to seek relief pursuant to the Home Equity Deed of Trust because the home equity lien was discharged in bankruptcy. Considered together, all of their claims are related in "motivation" and "origin" and form a "convenient trial unit", as Plaintiffs ultimately seek to retain possession and ownership of the Property due to the alleged discharge of the lien in bankruptcy. Despite Olusegun's contentions, the court in the Prior Lawsuit specifically noted that he signed the Reaffirmation Agreement and found that he failed to state a claim for relief.[10] (*See* doc. 6-1 at 2; Prior Lawsuit, doc. 18 at 2.)

Here, because the elements of res judicata appear on the face of Plaintiffs' petition and in documents that are subject to judicial notice, Defendant's affirmative defense may be considered under Rule 12(b)(6). *See Hall*, 305 F. App'x at 227–28; *see also Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL 3135574, at *3 n. 3 (N.D. Tex. Aug. 1,

---

[10]The fact that the foreclosure took place between the Prior Lawsuit and the current suit does not mean that the allegations in the Prior Lawsuit are different than those in the current suit. Plaintiffs are asserting that the loan was discharged in bankruptcy, and therefore Defendant has no right to foreclose or assert rights pursuant to the home equity loan documents. Therefore, they are raising the same challenges to foreclosure and the assertion of Defendant's rights under the home equity loan documents that Olusegun raised in the Prior Lawsuit. Notably, they are not asserting any claims based on the actual foreclosure. *Compare Bellot v. Wells Fargo Bank, N.A.*, No. H-13-2014, 2014 WL 2434170, at *5 (S.D.Tex. May 29, 2014)(finding res judicata existed where the plaintiffs raised the exact same challenges in the present case as they did in the prior case as to the defendant's ability to pursue foreclosure despite the fact that a foreclosure occurred after the prior lawsuit and before the current lawsuit), *with 1999 McKinney Avenue #807 Land Trust v. HSBC Bank USA, N.A.*, No. 3:13-cv-1868-B, 2014 WL 2573896, at *3-4 (N.D.Tex. Jun. 5, 2014)(finding the prior and current lawsuits did not involve the same transaction and therefore there was no res judicata where the first lawsuit concerned the defendant's right to enforce the terms of the deed of trust and the present case focused on effectiveness of the foreclosure order in light of the defendant's failure to serve the plaintiff in the Rule 736 proceeding).

2012) (considering the res judicata defense in a Rule 12(b)(6) context because "all [the] relevant facts [were] in the record and [were] uncontroverted"). Because all the elements of claim preclusion are satisfied, Plaintiffs' claims against Defendant are barred and should be dismissed with prejudice. *See Butts*, 2011 WL 7109344, at *2 (dismissing the plaintiff's claims as "barred by res judicata" because "both the instant action and the prior litigation [arose] out of the 'same nucleus of operative facts'—the mortgage loan obtained by [the] plaintiff on the subject property"); *see also Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 776 F.2d 1270, 1274 (5th Cir. 1985) ("[O]ne who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.") (internal quotations omitted).[11]

## V. NEW ALLEGATIONS

Plaintiffs' motion to remand appears to assert new factual allegations that were not asserted in their petition. (*See* doc. 10 at 2.) In a document entitled "Plaintiffs['] Motion for Non-Removal," attached to their motion to remand, Plaintiffs claim that they intend to prove that the Reaffirmation Agreement is null and void, and that it is signed by "a Plaintiff" and not "Plaintiffs." (*Id*.) They assert that Dan Willems is an actor for "Codilis, Stawiarski Law Firm, a Chase Bank Puppet." (*Id*.)

---

[11]To the extent Plaintiffs seek to bring a trespass cause of action against Defendant, that cause of action would also appear to be barred by res judicata. Any allegations that Defendant trespassed on the Property by virtue of the buyer's claim to possession of the Property arises from Plaintiffs' contention that Defendant is not authorized to foreclose or pursue its rights under the home equity loan documents because the loan was discharged in the Bankruptcy Case. Additionally, Plaintiffs' bare and conclusory allegation that the letter Olusegun received from the buyer of the Property was "trespassing" is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'")(citing *Twombly*, 550 U.S. at 570.) Also, "[t]respass to real property is defined as an unauthorized entry upon the land of another." *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-cv-342, 2012 WL 4633177, at *15 (E.D.Tex. Oct. 2, 2012). In order to prove trespass, a plaintiff must prove: (1) the plaintiff owns or has a lawful right to possess the real property; (2) the defendant entered the real property; (3) the entry was physical, intentional, and voluntary; and (4) the entry caused injury to the plaintiff. *Id*. (citing *Wilen v. Falkenstein*, 191 S.W.3d 791, 797-98 (Tex. App.–Fort Worth 2006, pet.denied). Plaintiffs failed to allege that Defendant physically entered the Property, and any trespass claim fails for that reason as well. *See Allison*, 2012 WL 4633177, at *15 (dismissing trespass claim where the plaintiffs alleged that the defendants foreclosed on the property and filed an eviction suit but their petition failed to include any facts alleging that the defendants physically entered the property").

Defendant's attorney allegedly coerced and bullied their bankruptcy attorney into tricking one of them into signing the Reaffirmation Agreement, "after the facts of the matter." (*Id*.)

Even if liberally construed as an amendment to their petition,[12] Plaintiffs' allegations and claims fail to state a claim for relief because they arise from the Bankruptcy Case, which includes the Reaffirmation Agreement. Plaintiffs' claims regarding the invalidity of the Reaffirmation Agreement, which was signed as part of the Bankruptcy Case, should have been brought in the Prior Suit. *See Test Masters*, 428 F.3d at 571. As noted, any claims based on the loan and the Bankruptcy Case are barred by res judicata and share the same "motivation" and "origin" as that of the Prior Lawsuit and form a convenient trial unit with it. Therefore, to the extent any new claims are asserted in their motion to remand, they are also subject to dismissal for failure to state a claim.

## VI. RECOMMENDATION

Plaintiffs' motion to remand should be **DENIED**, Defendant's motion to dismiss should be **GRANTED**, and all of Plaintiffs' claims against Defendant should be dismissed with prejudice.[13]

---

[12]Plaintiffs' new allegations in their motion to remand, to the extend they can be construed as a response to the motion to dismiss, are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990). They have not sought or been granted leave to amend their petition to add these allegations, and they have not shown that Defendant consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend their petition. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

[13] Plaintiffs seek to obtain a declaration, enjoin Defendant from foreclosing or attempting to affect their title or possession of the Property, and recover "fees income". (doc. 1-1 at 7.) Because their substantive claims are barred by res judicata, these requests should be dismissed. *See Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) ("To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'") (quoting *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)); *Turner*, 2011 WL 3606688, at *6 (dismissing the plaintiff's

**SO RECOMMENDED** on this 31st day of May, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

request for declaratory judgment where he pleaded no viable claim for relief).